Garland v. Smith For petitioner, I think we have Mr. Doherty? Yes, Your Honor. And welcome. And I think for the respondent, we have Rebecca Nahas? Is that right? I don't know if I pronounced Rebecca's last name. It's Nahas? Yes, Your Honor. Great, okay. But we'll start with Mr. Doherty. Thank you, Your Honors. Good morning. May it please the Court, Neal Fellham Doherty on behalf of the petitioner Omar Taiz Ramirez. The question before the Court is whether the government can show by clear and convincing evidence that the Idaho statute under which the petitioner was convicted is punishable as a felony under the Controlled Substances Act. Specifically... Why is that a question of evidence as opposed to a legal analysis? Excuse me? You said they have to prove by clear and convincing evidence, but why is this an evidentiary question? The evidence is whether or not this qualifies under authoritative sources of state law as a felony under the CSA. So there is still a high burden there that requires that they be able to point to the sources of law set forth by Mathis and that those authoritative sources of state law speak with certainty regarding whether or not this is the crime alleged. It's a legal question, though. It is. And we review it de novo, right? Yes, Your Honor. So, specifically, since this is 21 U.S.C. 841A, this is a specific federal statute, it's not a generic crime. It sets forth discrete elements, including both actus reus and mens rea, which both must be proven for a defendant to be found guilty under that statute. And with regard to both the actus reus and the mens rea, the Idaho statute of conviction is overbroad. And I want to begin by talking about the mens rea. So with regard to 841A, the Supreme Court in McFadden has said that to be culpable, one must either know the specific identity of the federally scheduled substance they're dealing with or know that it's some unspecified substance listed on the federal schedules. And the court explained that that requirement's not met where the defendant knows that they're dealing with an illegal or regulated substance under some law, but rather only when they know that they're dealing with a federally scheduled substance. Now, with regard to the Idaho statute, there's no dispute between the parties that Idaho criminalizes a greater number of substances than those of the CSA. And the Idaho statute's knowledge requirement is met where either the person knows the specific Idaho-controlled substance they possess or believe it to be a substance controlled by the state of Idaho. Counsel, when looking at the modified categorical approach, the Supreme Court has told us to look at the practicalities, whether there's any reasonable possibility that something will be prosecuted that isn't a match to the federal crime involved. And here, your theory, I gather, is that the state of Idaho could prosecute an individual who possesses a drug that is covered by both laws, but believes that it is only one of the very few things that is covered only by Idaho. You didn't cite any cases for the proposition that that occurred, and your client, of course, can't, because his substance is covered by both statutes. So why is there a realistic probability that the statute would apply to conduct a crime that falls outside the generic federal definition? First, I want to say that I believe that the element here is not that... Excuse me. The mens rea element is applicable to every single prosecution in Idaho. So every single prosecution under this statute has nothing to do with the federal statute. So there is no requirement that any proof of violation of a federal statute be made in Idaho. I think I maybe didn't make my question clear. If all the substances under the Idaho law were the same as the substances under federal law, so there's no overbreath at all, then the mental element is the same. They think that it's either the one that they had or that it's something else that's covered by the Controlled Substance Act. So the only thing that potentially makes it overbroad is that there's a conviction for a federally controlled substance which would match, but the person actually thinks that it is a substance covered only under Idaho law. So I would like to point out state v. Amelia, where there was a defendant convicted despite not knowing what substance they possessed. The substance did turn out to be amphetamine, but the conviction wasn't based off of his specific knowledge of amphetamine. Rather, it was based off of his suspicion that it was something that was controlled by Idaho state law. And that conviction arose because his own defense counsel argued based off of incorrect jury instructions that while he didn't know, he may have suspected. But that belief that something is controlled is good enough for a conviction in Idaho, and that's an example. But it's also, if you just think you have a federally controlled substance, but don't know which one, that's enough under federal law. Sure, absolutely. But here there was no requirement of proof that he thought that he had a substance controlled by federal law. So I think what Judge Graber was asking is, you might think you have one of these rare substances that Idaho thinks is criminal, but federal law doesn't. And so the question is, how likely is it that someone will have cocaine or methamphetamine, but think it's this rare thing that Idaho criminalizes that federal law doesn't? Well, as far as that specific example, I think that the fact that there is a complete distinct difference in the statute itself eliminates the need to prove a realistic possibility here. Under Duran-Sanzon, when the statute on its face is different, then there is no legal imagination necessary. Rodriguez-Gamboa in the Ninth Circuit stands for that as well. But the only difference is the list of substances. Idaho has a couple that are additional to the ones in the federal law. I would say no, it's not just the list of substances that are different. The actus reus has to do with the substances that are at issue, or the possessory act, I should say, while the mens rea has to do with the person's intent. And if the intent required is the intent to break Idaho law, and this is generally, these mens rea are not divisible in and of themselves. If the only requirement is that you break Idaho law, there is no requirement that you have an intent to break federal law. So this gets to Verdusco-Rangel, right? And I was on that panel. And in retrospect, I kind of wish it was a little clearer than it was, but I think the opinion is basically saying, Congress in the immigration laws was worried about illegal intent. And so why would it matter if you thought you were violating state law or thought you were violating federal law? Either way, you're violating the law with a drug, and that's what immigration law cares about. Isn't that what that opinion says? But it also applies whether you have a belief in illicitness or not. If you have the mistaken belief that you have some other thing, that is good enough. So that doesn't require an illicit mind. Wait, I'm sorry, under federal or state? I'm not sure I understood your answer. Under the Idaho statute, you can find a conviction where the person mistakenly believes they have some other substance. But it has to be, they have to think they have an illegal substance. They have to think they have an illegal substance, but not that they have to know that it's illegal. State v. Fox is the first case that deals with mens rea in Idaho, as it is now. And that had to do with a person who was convicted for possession of ephedrine, and their mistake of law defense, that they thought it was legal because it was legal federally, was inapplicable. It was not a defense at all. And they were convicted. So you don't have to actually have an intent to commit a crime. You only have to have the mistaken belief that you have something that you thought was legal. There is not necessarily a requirement of illicit mind there. But speaking to Verduzco-Rondell, Verduzco-Rondell had to do with the alternative track under Rendon, which was talking about the crime of illicit trafficking, as opposed to a match for a federal felony, a statutory felony. So I think that the mens rea, well, first, I remember the panel saying in their decision that there is not necessarily a mens rea element required for the generic crime of trafficking, just a commercial element, and that it has something to do with drugs. But then there's this discussion about what Congress would have thought in the immigration laws about mens rea, and I'm having trouble understanding why it wouldn't apply to both of the routes, even if only one route was at issue in that case. Well, so I do agree that with a generic crime that it makes sense. But the other route is whether or not this is a crime that is specifically punishable under the federal statute, under the CSA. And because it requires a mens rea match, it's not. It's just not. So this argument that Idaho doesn't really require you to know you have something, to think that you have something illegal, that seems a little different than I understood the argument in your brief. I mean, I thought the argument in your brief was you might think you have just an Idaho substance, not a California, sorry, not a federal substance. Did you argue that the point is that Idaho doesn't even require you to think it's illegal at all and that that's a difference? Right. Because what Idaho, as well as the federal statute to an extent, you know, requires is that you know what you have, not that you know that it's illegal. So if you know that you have cocaine, you're guilty under both statutes, correct? If you know you have or if you have cocaine, you know that you have it in your possession, but you mistakenly believe that it's a fedrin, you're still guilty in Idaho. Well, what if you mistakenly think it's sugar? Well, then you have a mistake of fact defense there. But are you saying Idaho could convict you if you thought it was sugar? No, I am not saying that because Idaho still requires that it be some substance controlled by the state of Idaho, which includes cold medicine. I see. But so then that is isn't that the same as the federal mens rea? I mean, maybe this gets us back to what Verduzco Rangel meant. But it seems like if if the mens rea in the state just has to match the general idea of the mens rea in the federal, do they match in that regard? So I would argue that they doesn't have to match the general idea, because the rule is that it be punishable and prosecutable under the Controlled Substances Act, which has a very specific statutory rule and elements that must be met. Is it like it? Yes. But that's why we have a generic trafficking crime, so that there is the ability to still find people guilty as aggravated felons of drug trafficking under this alternate route. But that's not the route that the BIA used here. Does it matter what route the BIA used if we're looking at the categorical approach to NOVA? I believe so. I believe that it matters 100 percent, because the BIA is choosing not to make that reasoning. And so if the like this court excuse me, I dare not tell the court what it is supposed to do. But, you know, precedent says that the court cannot affirm a decision of the BIA on a reason on reasoning that they didn't rely on. So that's usually true in immigration law. But I was struggling with whether that's true in this context where we have said we review the categorical approach to NOVA. We basically do the analysis ourselves. At that point, I'm not sure it matters exactly which reason the BIA gave. Well, if that's the case, I still argue that there is no element of commerce in the Idaho statute. What was your argument to the BIA about the mens rea requirement? It is the argument that I'm putting forth to this court now, that the mens rea are not matches. Well, there are different ways in which they can be not matches. And I think I'm having the same difficulty as Judge Friedland, which is I think what you're saying today seems different than what was in your brief. And that's why I was asking what specifically you had argued to the BIA. I guess I can look it up. Well, so very quickly, I haven't had a chance to get into divisibility yet. But with regards to divisibility, we do have cases. Stacey Baker was in our reply brief, which was an example of alternatively charged substances that cuts against the possibility that these are divisible by substance. Furthermore, with regard to even the subsection of petitioner's conviction itself, A1A, which has its own discrete category of substances controlled by the state of Idaho, which all have one single punishment, that category alone is overbroad. So just that specific portion is overbroad. So that also cuts against the idea that alternate substances result in alternate punishments. Because the actual statutory definition in and of itself, the one that we look at here to see whether or not it's a categorical match, is in itself a overbroad. What this goes to show is that neither prosecutors are not required to charge multiple crimes for multiple substances. Prosecutors, furthermore, are not stopped from charging one crime when there are substances in the alternative. And a jury doesn't need to unanimously find that either. Since a petitioner need not plead specifically to the identity of a substance when pleading guilty, nor need a jury unanimously find that there is a single substance when it's pled in the alternative, that goes to show that the specific identity of a substance is not an element of the crime. And I have 30 seconds left, and I would like to save that for rebuttal in case I get the chance. Thank you. Thank you, Your Honor. Good morning, and may it please the Court, my name is Rebecca Nahas, and I'm representing the United States Attorney General Merrick Garland. The Court should affirm the agency's conclusion that petitioner is removable for a drug trafficking aggravated felony because his Idaho conviction for possession of methamphetamine with intent to deliver categorically aligns with 21 U.S.C. 841A, which itself is a felony under the Controlled Substance Act. And in order for there to be a categorical match, there needs to be a lining up of the elements and a match. And the first element that I'll address, since the Court was interested in the issue with petitioner's argument, is the mental state. So in order for there to be a match, Idaho's mental state needs to be the same as the federal mental state. And there is a match because both Idaho and federal law require knowledge of the controlled substance. Which can be proven in two ways. The first way is that the defendant knew the substance in his possession. So he knew it was cocaine, regardless of whether he knew cocaine is illicit or not. And then the second way of proving it, both under Idaho and federal law, is that the defendant knew that it was a controlled substance. Perhaps the defendant didn't know what the specific drug was, but the defendant knew it was illegal. And the Court should reject petitioner's argument that it makes a difference, that that knowledge refers to what drugs are illicit in Idaho versus federal law. Because this Court has already rejected that argument in Verdusco-Renhel, as your Honor Judge Friedland mentioned. And in that case, yes, the Court was looking at the sister provision of an illicit trafficking crime. But the Court was considering whether, assuming there is a mens rea requirement, whether the state statute met the federal statute's mens rea. That's the same exact analysis. So why did this opinion that I was part of distinguish so many times between the two routes and say that we don't have to decide the mens rea of the route that we're dealing with here today? Well, your Honor, there is a different analysis. The illicit trafficking requires a commercial element versus the provision at issue here. Drug trafficking requires us to match up the mental state. But in considering whether that first route requires the mental state and whether California would satisfy it, the Court looked at the federal crime of distribution and looked at McFadden, which analyzes actually the statute we're using today, 21 U.S.C.E. 841. So the Supreme Court in McFadden was interpreting that precise statute. So the analysis applies equally here, and it's sound. The Court explained that the culpability of the defendant is what matters, and it's the same for both federal and Idaho, regardless of what drugs are prohibited under each jurisdiction. I have a very simple question. What drug was the palantir trafficking in? I sort of thought it was meth, methamphetamine. But I thought you had said cocaine. Your Honor, I apologize, but I'm having trouble hearing you. The question was what drug was involved in the crime at issue in this case. It was methamphetamine, Your Honor, which is federally controlled. Okay, so when you referred to cocaine, that was to illustrate your point, I guess. Yes, Your Honor. Could I ask you — oh, sorry, did you have a further question? I just said thank you. Could I ask you about the solicitation point? So I really appreciated the candor of your 28-J letter this week that drew our attention to State v. Grazian. It gave me a lot of pause, I have to say. And I know you tried to say in your letter you don't think it does, but let's say for a moment that it does allow pure solicitation crimes. If so, why could there be a match here? Because our court has held repeatedly that solicitation is not enough under the federal. Well, Your Honor, so Grazian and Otto are interpreting Idaho's attempt definition, and if you read Otto, it goes through a really long discussion of the jurisdictions that have adopted this minority approach of allowing a mere solicitation to amount to an attempt. And then it concluded at the end that that was not the approach that this court, that the Idaho Supreme Court would adopt. And then it went on, the court then went on to apply that rule that there needs to be more than solicitation and more than mere preparation. And it applied it to facts. You don't have to talk more about Idaho. Sorry, Otto. My problem is Grazian. So Grazian says, we disagree with Otto. And talking to someone about being a prostitute is enough to be a crime. So I'm really struggling with how Grazian didn't overrule Otto in the relevant way here. Sure, Your Honor. So Grazian said that the application of that law, that mere solicitation is not enough, that is what the court disagreed with. The application of that law to the facts in Otto. And that's why I wanted to sort of discuss Otto a little more. No, but Grazian, the conviction in Grazian was just for soliciting, right? It was a conversation about prostitution. Am I wrong? Well, Your Honor, also the substantive crime in Grazian was procurement of prostitution. And so embedded in that crime is the type of speaking about and inducing folks to commit that crime of prostitution, right? So the defendant... I'm not sure that's different than the drug crimes would be. You could procure drugs, you could procure prostitution. I'm not sure why that's different. Well, because the substantive crime was procurement of prostitution. So let me see if I can understand the distinction you're drawing, because I'm struggling a little myself. You're saying that the completed crime in the newer case is committed by words, and the completed crime here is not committed by words, but is committed by acts of possessing or selling or whatever of drugs. So is that the distinction you're trying to draw? Yes, Your Honor. So the substantial steps toward that crime of delivery, for example, or possession of a drug is going to look different than the substantial steps for the procurement offense. And so Grazian simply overruled Otto with respect to the application of... It didn't overrule Otto's statement of the law. It said that it was adequate. The statement of the law is we're not going to adopt a minority view that mere solicitation is sufficient. The court agreed with that in Grazian, but it overruled the other panel with respect to the application of the facts. But it said the general statement of the law. I think it's kind of unclear what that meant, but it disagreed really with, as I understood it, the result of Otto. But again, then Grazian, this procurement of prostitution, I'm not sure I understand the drug crime we're matching could involve procuring drugs, right? Is there some difference? What do you think procurement means in the state that would make it not like purchasing or something that would count as the drug crime? I don't understand what you're saying is the difference. Well, procurement is not the completed offense of prostitution. It's sort of the inchoate offense of prostitution. And how do we know that? Or how do we know that? So procurement has a definition, which unfortunately I don't have before me, but it does overlap from my research with other terms used in sort of facilitating or procuring a crime, inducing, soliciting, all those types of words. Procurement overlaps with them. So you're inducing someone else to commit a crime. Is that what you're saying? Exactly, Your Honor. So the completed crime of prostitution would be analogous to the completed crime of delivery of drugs. But the crime at issue in Grazion was procurement of prostitution. So it's embedded within it is sort of this inchoate solicitation conduct. And I want to also just point to the court in Grazion expressly stated that they are overruling auto to the extent that it misapplied the facts of the law. So that's directly an express statement from Grazion. And it makes sense because the facts of auto were that the defendant called someone, asked him to murder his wife, paid him, offered him twelve hundred dollars, paid him three hundred, promised to pay the rest at the completion of the murder. And I think there was one other thing. But that type of conduct isn't just mere solicitation like, hey, can you kill my wife? There was more more acts beyond that, which is why the court in Grazion overruled it, despite keeping the intact the law that the attempt can't be committed by mere solicitation, because that's the minority view that the court rejected. And I just want to remind your honors that the conclusion of the term solicit in the aiding and abetting definition petitioner, I believe his argument is based solely on that, that there is this overgrowth because Idaho's aiding and abetting definition includes the word solicit. But I wanted to explain our position that after Alfred, it's it's clear now that the categorical approach requires a comparison of the state aiding and abetting definition with a generic aiding and abetting definition. And at the time of briefing, Valdivia Flores was controlling and Valdivia Flores required us to apply the federal aiding and abetting definition. But we don't think the court needs to decide because Alfred only decided the generic aiding and abetting definition with respect to the mental state, not the Actus Reis, which is an issue in this case. But we don't think the court needs to decide the generic definition of aiding and abetting with respect to the Actus Reis, because our statute, the Idaho statute meets the federal, which is going to be narrower than the generic definition as Alfred. Sorry, can I just stop you there? Because our court's decisions in Sandoval v. Sessions and U.S. v. Rivera Sanchez, I think specifically say that the Controlled Substance Act does not include solicitation. So if we have to assume that we're bound by those cases, and you can tell me if we're not bound, but if we're bound by those cases, then I don't think we can say that the federal law includes solicitation. And so if Grazian says Idaho does allow solicitation, and you're making an argument that it doesn't mean that, but if it does mean that, it seems like we have a big problem after Alfred for your argument. Well, Your Honor, to clarify again, Grazian dealt with attempt under Idaho. And that's a separate question whether attempt involves a mere solicitation. I would ask for a supplemental briefing if the court is interested in that. We didn't brief that because Petitioner's argument was really based on the aiding and abetting definition. And we think that in the aiding and abetting definition context, Sandoval does not apply because, of course, embedded in every statute, as the Supreme Court explained in Duenas-Alvarez, including federal statutes, is aiding and abetting. So unlike Sandoval, where there was the court was tasked with looking at whether essentially Oregon's attempt, which allowed for mere solicitations, matched the CSA. The court was looking at, okay, is there mere solicitation or an inchoate solicitation as part of the CSA? But that's not the inquiry before the court. The inquiry before the court is whether the aiding and abetting definition in Idaho matches the aiding and abetting definition in the federal counterpart. And you don't think under Alfred we have to think about attempt as well for that analysis? Well, I'm not saying that we don't need to think about attempt. I would just ask for supplemental briefings if the court is interested in that, because our focus of briefing was on the aiding and abetting portion of Petitioner's argument. And so I would want an opportunity to demonstrate that Idaho hasn't overruled Otto on its statement of the law. But in terms of comparing aiding and abetting definitions, the term solicit is synonymous with those other terms included in the federal aiding and abetting definition, like command and induce and abet, where a lot of the definitions overlap and involve similar conduct. And I see that I'm over time, unless Your Honors have any questions. I hear no questions from my colleagues. Thank you, Your Honors. Thank you, Your Honors. I actually have no further rebuttal at this time. And with that, we would submit. Thank you very much. Okay, the Tellers-Ramirez case versus Garland is now submitted. I want to thank Mr. Daugherty and Ms. Nahas for their strong and effective advocacy. It's really a big aid to the court and we appreciate it. So with that, the case is submitted.
judges: GRABER, GOULD, FRIEDLAND